UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

JARQUEZ DOMINIQUE SWILLEY,

                         Petitioner,

v.

SHANE JACKSON,

                         Respondent.

_____/

Case No. 1:19-cv-367

Honorable Paul L. Maloney

## **REPORT AND RECOMMENDATION**

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Petitioner Jarquez Dominique Swilley is incarcerated with the Michigan Department of Corrections at the Earnest C. Brooks Correctional Facility in Muskegon County, Michigan. Following a joint jury trial in the Saginaw County Circuit Court, Petitioner was convicted of first-degree premeditated murder, carrying a weapon with unlawful intent, felon in possession of a firearm, and three counts of felony-firearm. On June 3, 2016, the court sentenced Petitioner as a fourth-offense habitual offender, Mich. Comp. Laws § 769.12, to concurrent terms of life imprisonment without parole for the first-degree murder conviction, and life in prison with the possibility of parole for the carrying a weapon with unlawful intent and felon-in-possession convictions, to be served consecutive to the three concurrent two-year terms of imprisonment for the felony-firearm convictions.

Petitioner filed a direct appeal to the Michigan Court of Appeals, in which he asserted the following claims: (1) that there was insufficient evidence to support his convictions, (2) that the trial court erred in failing to give special jury instructions regarding testimony by an accomplice, (3) that the court erred in denying Petitioner's motion for mistrial, (4) that the jury verdict was against the great weight of the evidence, (5) that the prosecutor engaged in misconduct when he used perjured testimony, (6) that Petitioner's counsel was ineffective, and (7) that the court erred in scoring Petitioner's sentencing guidelines.

The Michigan Court of Appeals affirmed Petitioner's convictions and sentences on November 14, 2017.  Petitioner sought leave to appeal to the Michigan Supreme Court, which denied leave on May 29, 2018.  Petitioner did not seek certiorari in the United States Supreme Court.

On May 9, 2019, Petitioner filed his habeas corpus petition.  Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court.  *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002). Petitioner placed his petition in the prison mailing system on May 6, 2019.  (Pet., ECF No. 1, PageID.20.)

The petition raises 6 grounds for relief, as follows:

I.      The verdict is against the great weight of the evidence.

II.     Insufficient evidence of first-degree premeditated murder.

III.    Prosecutorial misconduct knowing use of false testimony.

2

IV.    Denial of a fair trial due to the trial court's failure to give accomplice instructions.

V.    The trial court abused its discretion in denying Petitioner's motion for a mistrial.

VI.    Ineffective assistance of counsel.

(Pet., ECF No. 1, PageID.PageID.5-18.)   Respondent has filed an answer to the petition (ECF No. 5) stating that the grounds should be denied because they are not cognizable, lack merit, and/or are barred by procedural default.   Upon review and applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA), I find that the grounds are lacking in merit. Accordingly, I recommend that the petition be denied.

## Discussion

## I.    Factual allegations

In addressing Petitioner's appeal along with that of his co-defendant Ladarius Welch, the Michigan Court of Appeals summarized the basic underlying facts:

> Defendants' convictions arise from the April 2, 2014[,] shooting death of Davontae Weems.  The prosecution's theory of the case was that both Welch and Swilley had a history of disagreements and confrontations with Weems, and they were looking for him on April 2, 2014, in order to kill him.  The prosecution argued that Welch and Swilley saw Weems walking on the street, and that Swilley shot and killed Weems with Welch's assistance.
>
> At trial, DeQuaviz Cannon testified that he was a passenger in a vehicle with Welch and Swilley when they saw Weems walking down the street. Cannon testified that Welch turned into a driveway and Swilley, who had a gun, exited the van and started chasing Weems, firing shots at him.  Welch eventually stopped his van near Weems's body, exited the van, confirmed that Weems was dead, and told Swilley, "You got that motherf***er."  Cannon acknowledged that when he first spoke to the

3

police, he falsely stated that Welch and Swilley were not involved in the shooting because he did not want to implicate them.  Cannon received immunity in exchange for his testimony.

Swilley's former girlfriend, Arnisha Dorsey, testified that Swilley initially denied any involvement in the shooting, but then later admitted to her that he had killed Weems.  Dorsey also testified that after Swilley was incarcerated, he asked her to dispose of the gun, but she refused.  Thereafter, Swilley contacted Welch, who borrowed Dorsey's keys and removed the gun from her apartment.  Dorsey further testified that Swilley encouraged her to lie to the police.  She admitted that she initially told the police that she did not know anything about the shooting, but testified at trial that this statement was false.  Dorsey accepted a plea agreement in which she pleaded guilty to accessory after the fact to first-degree murder and obstruction of justice in exchange for her testimony and a recommendation that she be placed on probation.

(ECF No. 6-21, PageID.914.)

## II.   AEDPA standard

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. 312, 316 (2015) (internal quotation omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Williams*, 529 U.S. at 381-82; *Miller v. Straub*, 299 F.3d 570, 578-79 (6th Cir. 2002). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 565 U.S. 34, 37-38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 565 U.S. at 38).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 575 U.S.

at 316 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. 415, 424 (2014) (internal quotations omitted).

The AEDPA requires heightened respect for state factual findings.  *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998).  A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *Davis v. Lafler*, 658 F.3d 525, 531 (6th Cir. 2011) (en banc); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656.  This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## III.  Analysis

### A.  Verdict is against the great weight of the evidence

In Petitioner's first ground for relief, he asserts that his convictions are against the great weight of the evidence.  The Michigan Court of Appeals reviewed this claim for plain error, noting that Petitioner failed to preserve the claim by raising it in a motion for a new trial in the trial court.  In addressing this claim, the Michigan Court of Appeals stated:

Swilley argues that the jury verdict is against the great weight of the evidence because the testimony of Cannon and Dorsey was not credible because both witnesses gave prior statements to the police that were inconsistent with their trial testimony, and that both witnesses acknowledged that they received favorable treatment in exchange for their testimony. However, the issue of witness credibility ordinarily should be left for the trier of fact, even when the witness testimony is inconsistent or conflicting. *People v Lemmon*, 456 Mich 625, 642-643; 576 NW2d 129 (1998). Cannon and Dorsey both explained their reasons for their prior inconsistent statements, and the jury was aware of the favorable treatment they received in exchange for their testimony. Their testimony at trial was not inherently implausible, and it did not defy physical realities. Therefore, the credibility concerns with their testimony are not a sufficient basis on which to grant a new trial on the ground that the jury's verdicts are against the great weight of the evidence. See *Id*. at 645-646.

(ECF No. 6-21, PageID.920.)

The assertion that the verdict was against the great weight of the evidence does not state grounds for habeas corpus relief. The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a). The Michigan courts apply the great-weight-of-the-evidence standard to determine whether to grant a new trial. *See People v. Lemmon*, 576 N.W.2d 129, 137 (Mich. 1998). This question is distinct from the due-process guarantee offended by insufficient evidence and "does not implicate issues of a constitutional magnitude." *Id*. at 133 n.8. As a consequence, a "weight of the evidence claim" is purely a matter of state law and is not cognizable on habeas review. *See* 28 U.S.C. § 2254(a); *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) ("[I]t is only noncompliance with federal law that renders a state's criminal judgment susceptible to a collateral attack in the federal courts."); *Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ( "In conducting habeas review, a federal court is

limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."); *accord Chatman v. Warden Ross Corr. Inst.*, No. 2:10–cv–1091, 2013 WL 1663919, at *10 (S.D. Ohio Mar. 26, 2013); *Underwood v. Berghuis*, No. 1:08–cv–642, 2011 WL 693 8471, at *15 (W.D. Mich. Aug. 8, 2011) ("Since a 'weight of the evidence claim' is purely a matter of state law, it is not cognizable on habeas review."). Because this Court lacks authority to review a state court's application of its own law, the state-court determination that the verdict was not against the great weight of the evidence is final.

### B. Insufficient evidence of first-degree premeditated murder

Petitioner asserts that there is insufficient evidence to support his conviction of first-degree murder. A Section 2254 challenge to the sufficiency of the evidence is governed by the standard set forth by the Supreme Court in *Jackson v. Virginia*, 443 U.S. 307, 319 (1979), which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Id.* Issues of credibility may not be reviewed by the habeas court under this standard. *See Herrera v. Collins*, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as

established by state law.  *Jackson*, 443 U.S. at 324 n.16; *Allen v. Redman*, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

The *Jackson v. Virginia* standard "gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.  Moreover, because both the *Jackson* standard and AEDPA apply to Petitioner's claims, "the law commands deference at two levels in this case:  First, deference should be given to the trier-of-fact's verdict, as contemplated by *Jackson*; second, deference should be given to the Michigan Court of Appeals' consideration of the trier-of-fact's verdict, as dictated by AEDPA." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008).  This standard erects "'a nearly insurmountable hurdle'" for petitioners who seek habeas relief on sufficiency-of-the-evidence grounds. *Davis v. Lafler*, 658 F.3d 525, 534 (6th Cir. 2008) (quoting *United States v. Oros*, 578 F.3d 703, 710 (7th Cir. 2009)).

It is the prerogative of the state to define the elements of the crime and that definition binds the federal courts. *See Johnson v. United States*, 559 U.S. 133, 138 (2010) ("We are, however, bound by the Florida Supreme Court's interpretation of state law, including its determination of the elements . . . ."); *Jackson*, 443 U.S. at 324 n.16 ("The respondents have suggested that this constitutional standard will invite intrusions upon the power of the States to define criminal offenses. Quite to the contrary, the standard must be applied with explicit reference to the substantive

elements of the criminal offense as defined by state law."). Although Due Process Clause guarantees criminal defendants a meaningful opportunity to present a complete defense, *California v. Trombetta*, 467 U.S. 479, 485 (1984), it is also the prerogative of the state to define whether or not a defense applies to a particular crime. *See Foucha v. Louisiana*, 504 U.S. 71, 96 (1992) (acknowledging "the general rule that the definition of both crimes and defenses is a matter of state law . . . ."); *Gimotty v. Elo*, 40 F. App'x 29, 32 (6th Cir. 2002) ("States are free to define the elements of, and defenses to, crimes. . . . In determining whether a petitioner was entitled to a defense under state law, federal courts must defer to state-court interpretations of the state's laws . . . .").

Petitioner raised his sufficiency claim on direct appeal. In concluding that there was sufficient evidence to support Petitioner's convictions, the Michigan Court of Appeals noted:

> This Court is required to "view the evidence in a light most favorable to the prosecution to determine whether a rational trier of fact could have found the essential elements of the crime to have been proved beyond a reasonable doubt." [*People v. Meissner*, 812 N.W.2d 37, 46 (2011).] This Court will not interfere with the jury's role of determining the weight of the evidence or the credibility of witnesses. *People v Milstead*, 250 Mich App 391, 404; 648 NW2d 648 (2002). A trier of fact may make reasonable inferences from direct or circumstantial evidence in the record. *People v Vaughn*, 186 Mich App 376, 379-380; 465 NW2d 365 (1990).
>
> ***
>
> Cannon testified that he witnessed Swilley exit Welch's van to chase after and then fatally shoot Weems, and Dorsey testified that Swilley admitted to her that he had killed Weems. Viewed in the light most

favorable to the prosecution, that testimony was sufficient to support Swilley's convictions. Swilley's argument on appeal is based on his attacks on the credibility of the prosecution witnesses, but the credibility of their testimony was for the jury to resolve, and we will not interfere with that role on appeal.

(ECF No. 6-21, PageID.915-16.) Although the court of appeals cited only state cases, it applied a standard functionally identical to the *Jackson* standard.

The findings of the Michigan Court of Appeals are supported by the record. Mr. Cannon testified that he was riding in a van with Petitioner and Mr. Welch, when Petitioner said, "there goes Dee [the victim]," and jumped out of the car, pulling out a gun from his hip area. Petitioner then began to chase the victim, who was running from Petitioner. (ECF No. 6-13, PageID.556-561.) Mr. Welch and Mr. Cannon drove around for a few minutes until Mr. Cannon heard shots. Shortly thereafter, Mr. Welch stopped the van and got out. As Mr. Welch was running toward the body, Petitioner was running toward the van. Mr. Cannon also got out of the van and heard Mr. Welch say, "[Y]ou got that motherfucker." Mr. Cannon stated that Petitioner did not seem to be emotional after the shooting. As they were driving away from the area, Mr. Cannon said that he did not want any part of the situation, so Mr. Welch and Petitioner dropped Mr. Cannon off. (*Id.*, PageID.562-566.)

Mr. Cannon testified that when he was initially asked about the incident, he denied any knowledge of it because he considers Petitioner and Welch to be members of his family. Mr. Cannon admitted that he had received immunity for his truthful testimony. Mr. Cannon indicated that he understood that he would be subject to

prosecution if he perjured himself.  (*Id.*, PageID.569-572.)  On cross-examination, Mr. Cannon conceded that he was on probation at the time he observed the murder, and that he continued to deny knowledge of the crime even when the detective told him that since he had a baby on the way, it would be better to be a witness than a defendant.  (*Id.* at PageID.576-579.)  After telling two different detectives that he did not have any knowledge of the crime, Mr. Cannon changed his story.  Eventually a detective told Mr. Cannon that he could be charged with conspiracy to commit murder and could face up to life in prison.  Mr. Cannon subsequently told police about the crime and was given immunity and appointed an attorney.  (*Id.*, PageID.580-583.)

Arnisha Dorsey testified that Petitioner was the father of her children.  Ms. Dorsey testified that she had been receiving phone calls telling her that Petitioner had killed someone.  Ms. Dorsey asked Petitioner if that was true, but he denied killing anyone.  Initially, Ms. Dorsey believed Petitioner because he was behaving normally when she saw him.  Ms. Dorsey continued to hear "in the streets" that Petitioner had killed Dee Weems, so she kept asking him about it.  At some point, Petitioner admitted that he had done it, stating "I killed the Nigga."  Ms. Dorsey did not inform the authorities because she was afraid.  (ECF No. 6-15, PageID.720-723.)

Ms. Dorsey stated that a few weeks later, she had a conversation with Petitioner while he was in the Saginaw County Jail.  During the conversation, Petitioner asked Ms. Dorsey to get rid of a gun for him.  Ms. Dorsey refused because she did not want to get into trouble.  Petitioner's brother, Ladarius Welch, came to

Ms. Dorsey's place of work and got the keys to her residence, so that he could move the gun.  Mr. Welch met Ms. Dorsey at her home when she got off work so he could return her keys.  Mr. Welch told Ms. Dorsey that he had taken care of the gun and that it was gone.  (*Id.*, PageID.723-724.)

At some point, Ms. Dorsey was questioned by Detective Scott.  Initially, Ms. Dorsey denied any knowledge of the murder.  Ms. Dorsey stated that both Petitioner and his father encouraged her to lie to police.  (*Id.*, PageID.725.)  Ms. Dorsey conceded that she had been charged with three different felonies, including lying to police, accessory after the fact, and felony firearm.  Ms. Dorsey testified that she agreed to tell the truth in exchange for not having to go to prison.  (*Id.*, PageID.728-731.)

The facts provide more than sufficient evidence for a rational trier of fact to find that petitioner formed a premeditated and deliberate intent to kill.  Even more obviously, Petitioner fails to overcome the double deference owed to the state court's sufficiency determination.  As a consequence, Petitioner is not entitled to habeas relief on this ground.

### C.     Prosecutorial misconduct – knowing use of false testimony

Petitioner claims that the prosecutor engaged in misconduct by eliciting or failing to correct perjured testimony from Mr. Cannon.  Petitioner raised this claim in the Michigan Court of Appeals in his *pro per* supplemental brief.  The Michigan Court of Appeals noted that Petitioner failed to preserve this issue because he did not

raise it in the trial court.  The Michigan Court of Appeals then went on to address the

claim, stating:

> The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial.  *People v Watson*, 245 Mich App 572, 586; 629 NW2d 411 (2001).  A prosecutor may not knowingly use perjured testimony to obtain a conviction, and must inform the trial court and the defendant when a prosecution witness lies under oath.  *People v Wiese*, 425 Mich 448, 455; 389 NW2d 866 (1986).  A prosecutor must correct perjured testimony related to the facts of the case.  *People v Gratsch*, 299 Mich App 604, 619-620; 831 NW2d 462 (2013), vacated in part on other grounds 495 Mich 876 (2013).
>
> Swilley's argument is based on the fact that Cannon admitted at trial that his testimony differed from his earlier statements to the police.  He therefore maintains that Swilley's trial testimony was perjurious and should have been described as such by the prosecutor.  Swilley seemingly assumes that because Cannon's statements to the police were more favorable to him, Cannon's trial testimony must have been false.  Nothing in the record supports this assumption, or Swilley's assertion that the prosecutor was required to characterize Cannon's trial testimony as false.  More significantly, the fact that Cannon had made an earlier statement that differed from his trial testimony was fully disclosed to the jury.  Therefore, the issues related to Cannon's testimony were properly resolved as a credibility decision made by the jury.

(ECF No. 6-21, PageID.920.)

Respondent asserts that this Court is barred from addressing Plaintiff's claim

by the doctrine of procedural default.  When a state-law default prevents further state

consideration of a federal issue, the federal courts ordinarily are precluded from

considering that issue on habeas corpus review.  *See Ylst v. Nunnemaker*, 501 U.S.

797, 801 (1991); *Engle v. Isaac*, 456 U.S. 107 (1982).  To determine whether a

petitioner procedurally defaulted a federal claim in state court, the Court must

consider whether: (1) the petitioner failed to comply with an applicable state procedural rule; (2) the state court enforced the rule so as to bar the claim; and (3) the state procedural default is an "independent and adequate" state ground properly foreclosing federal habeas review of the federal constitutional claim.  *See Hicks v. Straub,* 377 F.3d 538, 551 (6th Cir. 2004); *accord Lancaster*, 324 F.3d 423, 436-37 (6th Cir. 2003); *Greer v. Mitchell*, 264 F.3d 663, 672 (6th Cir. 2001); *Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001).  In determining whether a state procedural rule was applied to bar a claim, a reviewing court looks to the last reasoned state-court decision disposing of the claim.  *See Ylst*, 501 U.S. at 803; *Guilmette v. Howes*, 624 F.3d 286, 291 (6th Cir. 2010).

If a petitioner procedurally defaulted his federal claim in state court, the petitioner must demonstrate either (1) cause for his failure to comply with the state procedural rule and actual prejudice flowing from the violation of federal law alleged in his claim, or (2) that a lack of federal habeas review of the claim will result in a fundamental miscarriage of justice.  *See House v. Bell*, 547 U.S. 518, 536 (2006); *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 495 (1986); *Hicks*, 377 F.3d at 551-52.  The miscarriage-of-justice exception only can be met in an "extraordinary" case where a prisoner asserts a claim of actual innocence based upon new reliable evidence.  *House*, 547 U.S. at 536. A habeas petitioner asserting a claim of actual innocence must establish that, in light of new evidence, it

is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.  *Id.* (citing *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).

Where the state court has noted a defendant's possible violation of a procedural rule but does not expressly hold that the procedural rule applies, it does not constitute a procedural default.  *Smith v. Cook*, No. 17-4118, 2020 WL 1875172, at *4 (6th Cir. Apr. 15, 2020) (citing *Clinkscale v. Carter*, 375 F.3d 430, 441-42 (6th Cir. 2004) ("Although the decision unquestionably mentions [the procedural rule] and its requirements, it also emphasizes and relies upon [the merits].  It is unclear on what ground, or grounds, the court's judgment rested.  Under these circumstances, we are unable to say that the Ohio Court of Appeals' decision 'clearly and expressly states that its judgment rests on a state procedural bar.'" (quoting *Harris*, 489 U.S. at 263)); *Sanders v. Cotton*, 398 F.3d 572, 579–80 (7th Cir. 2005) (finding no procedural default where state court noted that "if an issue was available on direct appeal but not litigated, it is [forfeited]," but then "immediately proceeded to address and decide the merits" without directly saying that forfeiture had occurred)).  Respondent, however, suggests that the Michigan Court of Appeals had found that the issue was unpreserved and reviewed Petitioner's claim of prosecutorial misconduct only for plain error, which "does not constitute a waiver of state procedural default rules." *Seymour v. Walker*, 224 F.3d 542 (6th Cir. 2000) (citations omitted); *see also Wogenstahl v. Mitchell*, 668 F.3d 307, 337 (6th Cir. 2012); *Fleming v. Metrish*, 556 F.3d 520, 530 (6th Cir. 2009); *Keith v. Mitchell*, 455 F.3d 662, 673-74 (6th Cir. 2006).

16

The Michigan Court of Appeals did not expressly rest its decision on Petitioner's failure to preserve his prosecutorial misconduct claim and did not expressly review the issue solely for plain error.  As a result, Petitioner did not procedurally default his claim.  Accordingly, the Court will review the claim on the merits.

In order for a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982)).  In evaluating the impact of the prosecutor's misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental. *See United States v. Young*, 470 U.S. 1, 11-12 (1985).  The court also must consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel and whether a curative instruction was given by the court. *See id.* at 12-13; *Darden*, 477 U.S. at 181-82; *Donnelly*, 416 U.S. at 646-47; *Berger v. United States*, 295 U.S. 78, 84-85 (1935).

17

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)).  Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly*, 416 U.S. at 645).  Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas petitioner must show that the state court's rejection of his prosecutorial misconduct claim "'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Parker v. Matthews*, 567 U.S. 37, 47 (2012) (quoting *Harrington*, 562 U.S. at 103).

"The Supreme Court has long recognized that due process is denied where '[the] state has contrived a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured.'" *Brooks v. Tennessee*, 626 F.3d 878, 894 (6th Cir. 2010) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)).  Deliberate deception is "incompatible with 'rudimentary demands of justice.'" *Giglio v. United States*, 405 U.S. 150, 153 (1972).

18

In *Kyles v. Whitley*, the Supreme Court reaffirmed that a conviction obtained by the knowing use of perjured testimony is fundamentally unfair and must be set aside if there is a reasonable likelihood that the false testimony affected the judgment of the jury.  514 U.S. 419, 433 n.7 (1995).  In order to establish a claim of prosecutorial misconduct based on the use of perjured testimony, Petitioner must show that the testimony was indisputably false, that the prosecution knew it was false, and that it was material.  *Byrd v. Collins*, 209 F.3d 486, 517 (6th Cir. 2000).  The presentation of a witness who recants or contradicts his or her prior testimony should not be confused with perjury.  Where there is an inconsistency between trial testimony and prior statements to police, it is for the jury to sort this out.  *Rosencrantz v. Lafler*, 568 F.3d 577, 585-86 (6th Cir. 2009).  As the *Rosencrantz* court noted, once the prosecution has elicited inconsistent testimony, it is for defense counsel to raise the issue on cross examination.  *Id.* at 586.

In this case, the Court cannot say that the testimony of Mr. Cannon and Ms. Dorsey was indisputably false.  Instead, it is at least equally likely that the prior statements of Mr. Cannon and Ms. Dorsey were false, and that their testimony at trial was truthful.  Both witnesses were subjected to questions regarding their prior statements on cross examination, and both gave testimony regarding the reason for the change in their statements.  As recognized by the Michigan Court of Appeals, the credibility of witnesses is for the jury to decide.  *Rosencrantz*, 568 F.3d at 585-86.  Moreover, even if the testimony was false, there is no indication that the prosecution

19

was aware that it was false.  Without a showing of the testimony's falsity and that the prosecutor knew it to be false, Petitioner fails to show a due process violation in allowing the testimony.

Accordingly, Petitioner fails to demonstrate that the prosecutor committed misconduct, much less to demonstrate that the court of appeals' rejection of his claim " 'was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.' " *Parker*, 567 U.S. at 47 (quoting *Harrington*, 562 U.S. at 103).

### D.    Denial of a fair trial due to the trial court's failure to give accomplice instructions

Petitioner claims that the trial court erred when it failed to give accomplice instructions in relation to the testimony of Mr. Cannon and Ms. Dorsey.

Typically, a claim that a trial court gave an improper jury instruction is not cognizable on habeas review.  Instead, Petitioner must show that the erroneous instruction so infected the entire trial that the resulting conviction violates due process. *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).  *See also Estelle*, 502 U.S. at 75 (erroneous jury instructions may not serve as the basis for habeas relief unless they have so infused the trial with such unfairness as to deny due process of law); *Rashad v. Lafler*, 675 F.3d 564, 569 (6th Cir. 2012) (same); *Sanders v. Freeman*, 221 F.3d 846, 860 (6th Cir. 2000).  If Petitioner fails to meet this burden, he fails to show that the jury instructions were contrary to federal law.  *Id.*  The Supreme Court

repeatedly has rebuffed due process challenges to erroneous jury instructions. *Waddington v. Sarausad*, 555 U.S. 179, 192-94 (2009).

The Michigan Court of Appeals rejected Petitioner's claim as meritless:

Swilley sought to have three instructions read to the jury: M Crim JI 5.4, which addresses testimony from an undisputed accomplice, M Crim JI 5.5, which addresses the testimony of a disputed accomplice, and M Crim JI 5.6, which explains how the jury is to evaluate the testimony of an accomplice. Swilley argues that the undisputed accomplice instruction applied to Dorsey's testimony because she was charged with being an accessory after the fact and that the disputed accomplice instruction applied to Cannon's testimony because a witness saw three men running from the crime scene. We disagree.

No evidence placed Dorsey at the scene of the crime or demonstrated that she had any advance knowledge that Swilley or Welch planned to shoot Weems. Because there is no basis to conclude that Dorsey could have been charged with the same crimes with which defendants were charged, she cannot be considered an accomplice to those crimes. *See People v Ho*, 231 Mich App 178, 189; 585 NW2d 357 (1998) (disputed accomplice instruction not necessary where the person in question was not present at the scene of the crime for which the defendant was charged). Moreover, the trial court protected defendants' right to a fair trial by instructing the jury that it could consider the evidence of Dorsey's plea agreement as it related to her credibility and self-interest in testifying.

Next, Cannon admitted that he was present when Welch stopped his van to allow Swilley to exit and pursue Weems. But his mere presence was insufficient to show that he aided or abetted either Welch or Swilley, *People v Norris*, 236 Mich App 411, 419-420; 600 NW2d 658 (1999), and no evidence supported a finding that Cannon did anything to show that he knowingly and willingly helped or cooperated with defendants to commit the crime. Accordingly, the trial court did not abuse its discretion by refusing to give the requested accomplice instructions.

(ECF No. 6-21, PageID.918.) Thus, the court of appeals held that Petitioner was not entitled under state law to the jury instructions he requested. It is not the province

21

of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 68. The decision of the state courts on a state-law issue is binding on a federal court. *See Johnson v. United States*, 559 U.S. 133, 138 (2010)); *Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) (quoting *Bradshaw*, 546 U.S. at 76). *See also Thomas v. Stephenson*, 898 F.3d 693, 700 n.1 (6th Cir. 2018) (same).

Moreover, nothing about the failure to give the accomplice instructions infused the trial with such unfairness as to deny due process of law. *Estelle*, 502 U.S. at 75. First, the trial court carefully instructed the jury regarding witness testimony:

> As I said numbers of times before, it's your job to decide what the facts of the case are. You must decide which witnesses you believe and how important you think their testimony is. You don't have to accept or reject everything a witness says. You're free to believe all, none, or any part of any person's testimony.

> In deciding which testimony you believe, you should rely on your own common sense and everyday experiences. However, in deciding whether you believe a witness's testimony, you must set aside any bias or prejudice that you may have based on irrelevant factors such as race, gender, or national origin. There's no fixed set of rules for judging whether you believe a witness, but it may help you to think about these questions:

> Was the witness able to see or hear clearly? How long was the witness watching or listening? Was anything else going on that might have distracted the witness?

> Did the witness seem to have a good memory? How did the witness look and act while testifying? Did the witness seem to be making an honest effort in telling the truth, or did the witness seem to evade the questions or argue with the lawyers?

Does the witness's age or maturity affect how you judge his or her testimony?  Does the witness have any bias or prejudice or personal interest in how this case is decided?  Have there been any promises, threats, suggestions, or other influences that affect how the witness testified?

In general, does the witness seem to have any special reason to tell the truth or any special reason to lie?  And, all in all, how reasonable does the witness's testimony seem when you think about all the other evidence in the case?

Sometimes the testimony of different witnesses will not agree. You must – and you must decide which testimony you accept.  You should think about whether the disagreement involves something important or not and whether you think someone is lying or simply mistaken.

People do see and hear things differently, and witnesses may testify honestly but simply be wrong about what they thought they saw or, for that matter, what they remember.  It's also a good idea to think about which testimony agrees best with all the other evidence in the case.

However, you may conclude that a witness deliberately lied about something that's important to how you decide the case.  If so, you may [choose] not to accept anything that witness says.  On the other hand, if you think a witness lied about some things but told the truth about others, you may simply accept the part you think is true and ignore the rest.

(ECF No. 6-17, PageID.837-838.)  Thus, the jury was fully aware of the factors that could cast doubt on the credibility of witnesses Dorsey and Cannon.

Second, in *Young v. Trombley*, 435 F. App'x 499 (6th Cir. 2011), the Sixth Circuit rejected the notion that a cautionary accomplice instruction, by its very nature, was of special constitutional significance:

23

> Neither the United States Supreme Court nor this court has "requir[ed] accomplice instructions as a general matter." *Scott v. Mitchell*, 209 F.3d 854, 883 (6th Cir. 2000).  Instead the Supreme Court has consistently held that the only question to be answered in a habeas challenge to a jury instruction is "whether the ailing instruction [or the omission of a requested instruction] by itself so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973).  Furthermore, that instruction, or the absence of an instruction, "must be considered in the context of the instructions as a whole and the trial record." *Estelle v. McGuire*, 502 U.S. 62, 72 (1991) (citing *Cupp*, 414 U.S. at 147).

*Id.* at 503 (parallel citations omitted).  The *Young* court then reviewed its prior decisions regarding accomplice testimony:

> [W]hen presented in *United States v. Carr*, 5 F.3d 986, 992 (6th Cir. 1993), with a challenge to a district court's failure to instruct the jury specifically "regarding the inherently questionable credibility of those witnesses who had earlier pled guilty to related charges," we noted:
>
>> The court's instruction adequately informed the jury regarding the credibility of witness testimony, and so we are not troubled simply because the court chose not to explicitly highlight the credibility problems inhering in accomplice testimony.  The instructions alerted the jury to the various considerations that it should take into account in weighing testimony, and it had an ample basis for rejecting the testimony of the accomplice witnesses if it had chosen to do so.
>
> Similarly, in *Goff v. Bagley*, 601 F.3d 445 (6th Cir. 2010), another habeas petitioner argued, as does Young, "that the trial court erred in failing to give a specific instruction to the jury regarding the credibility of testimony by accomplices and informants and that . . . counsel was ineffective for failing to raise this issue . . . ." *Id.* at 469.  Relying upon *Carr* and *Scott*, the *Goff* majority found that the instructions given in that case "adequately informed the jury regarding the credibility of witness testimony" and "alerted the jury to the various considerations that it should take into account in weighing testimony." *Id.* at 470 (internal quotation marks omitted).  Those instructions, in pertinent part, provided:

24

> You are the sole judges of the facts and the credibility of the witnesses and the weight of the evidence.  To weigh the evidence you must consider the credibility of the witnesses.  You will apply the tests of truthfulness which you apply in your daily lives.  These tests include the appearance of each witness upon the stand, their manner of testifying, the reasonableness of their testimony, the opportunity they had to see, hear, and know the things concerning which they testified about, their accuracy of memory, their frankness or lack of it, their intelligence, their interest and bias, if any, together with all the facts and circumstances surrounding their testimony.  Applying these tests you will assign to the testimony of each witness such weight as you deem proper.
>
> You are not required to believe the testimony of any witness simply because he or she was under oath.  You may believe or disbelieve all or any part of the testimony of any witness.  It is your province to determine what testimony is worthy of belief and what testimony is not worthy of belief.

*Id.* at 470 (emphasis in original).  Because those instructions thus satisfied the criteria set out in *Scott*, we concluded that "the failure to give a specific accomplice instruction did not violate Goff's constitutional rights." *Id.*

*Young*, 435 F. App'x at 503.  With the template of constitutionally sufficient instructions from *Scott* and *Goff* before it, the court considered whether *Young*'s instructions were acceptable.

> The jury instructions given at Young's trial contained the same directives as did the charge approved in *Goff* . . . .  Because the totality of [Young's] "instruction both informs the jury regarding credibility and alerts the jury to what is properly considered when determining credibility," "the failure to give a specific accomplice instruction [also] did not violate [Young's] constitutional rights." *Goff*, 601 F.3d at 470. Consequently, the Michigan state court's determinations consistent with such a conclusion cannot be considered unreasonable.

*Young*, 435 F. App'x at 504-505.

25

The instructions deemed appropriate in *Young* are substantially the same as the instructions given at the end of testimony in Petitioner's trial. *Compare Young*, 435 F. App'x at 504, *with* ECF No. 6-17, PageID.837-838. Indeed, if anything, the instructions in Petitioner's case gave greater detail about the potential bias of witnesses gaining a benefit for their testimony. Accordingly, Petitioner has failed to show that the state appellate court's determinations are contrary to, or an unreasonable application of, clearly established federal law. He is not, therefore, entitled to habeas relief on this issue.

**E.    The trial court abused its discretion in denying Petitioner's motion for a mistrial**

Petitioner claims that the trial court abused its discretion when it denied his motion for a mistrial after recorded conversations between Petitioner and Ms. Dorsey, which occurred while Petitioner was in jail, were played for the jury. During the calls, Petitioner told Ms. Dorsey that he had refused to take a polygraph and that she could also refuse to take one. In addressing this claim, the Michigan Court of Appeals stated:

> Swilley argues in both his principal brief on appeal and in his Standard 4 brief that the trial court abused its discretion by denying his motion for a mistrial because of references to polygraph tests in recorded telephone conversations between Swilley and Dorsey. We review for an abuse of discretion a trial court's decision on a motion for a mistrial. *People v Nash*, 244 Mich App 93, 96; 625 NW2d 87 (2000). "A trial court should grant a mistrial 'only for an irregularity that is prejudicial to the rights of the defendant and impairs his ability to get a fair trial.'" *People v Schaw*, 288 Mich App 231, 236; 791 NW2d 743 (2010), quoting *People v Haywood*, 209 Mich App 217, 228; 530 NW2d 497 (1995).

***

During Dorsey's testimony, the prosecution played recorded telephone calls between Dorsey and Swilley.  Their conversations included references to both Dorsey and Swilley refusing to take polygraph tests. No evidence regarding any actual polygraph test or any results was received.  A reference to taking or passing a polygraph test constitutes error, but the error does not always mandate reversal. *Nash*, 244 Mich App at 97-98.  To determine whether reversal is required, this Court should consider: (1) whether the defendant objected to the reference and/or requested a cautionary instruction; (2) whether the reference to the polygraph was inadvertent; (3) whether the reference was repeated or isolated; (4) whether the reference was made in an attempt to bolster the credibility of a witness; and (5) whether the results of the polygraph test were admitted or whether the reference was merely to a test having been taken.  *Id*. at 98.

Application of the *Nash* factors does not indicate that Swilley was entitled to a mistrial under the facts presented.  The references to polygraph tests were improper; however they were isolated, fairly vague, and did not indicate that any person had in fact taken a polygraph test, and there was no disclosure of the results of any polygraph test.  There is also no basis for concluding that the references were introduced in an attempt to bolster the credibility of any witness. Accordingly, the trial court did not abuse its discretion by denying Swilley's motion for a mistrial.

(ECF No. 6-21, PageID.919.)

The Michigan Court of Appeals looked solely to state law to resolve the claim as Petitioner raised it on his direct appeal.  The state court's conclusions that the admission of the polygraph reference was error as a matter of state law, and that the error did not warrant a mistrial as a matter of state law, are binding upon this Court.  *See Wainwright*, 464 U.S. 78, 84 (1983).  The Sixth Circuit repeatedly has recognized " 'that a state court's interpretation of state law, including one announced

on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.' " *Stumpf*, 722 F.3d at 746 n.6 (quoting *Bradshaw*, 546 U.S. at 76).

Because it is not the province of a federal habeas court to re-examine state-law determinations on state-law questions, *Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 68, this Court may only grant relief if Petitioner is able to show that the state court's evidentiary ruling was in conflict with a decision reached by the Supreme Court on a question of law or if the state court decided the evidentiary issue differently than the Supreme Court did on a set of materially indistinguishable facts. *Sanders*, 221 F.3d at 860. Petitioner has not met this difficult standard. As the Sixth Circuit Court of Appeals explained in *Maldonado v. Wilson*, 416 F.3d 470 (6th Cir. 2005):

> The Supreme Court has never held that statements implying the results of a polygraph or similar test render the defendant's trial fundamentally unfair, in violation of the Due Process Clauses of the Fifth and Fourteenth Amendments. Further, we are aware of no federal court of appeals that has found a due process violation warranting a grant of habeas relief under these facts. Indeed, three circuits have rejected habeas petitioners' claims that testimony about truth testing violated the petitioners' due process rights. Notably, two reached this conclusion under pre-AEDPA de novo review. *Weston v. Dormire*, 272 F.3d 1109, 1113 (8th Cir. 2001) (AEDPA deference); *Cacoperdo v. Demosthenes*, 37 F.3d 504, 510 (9th Cir. 1994) (de novo review); *Escobar v. O'Leary*, 943 F.2d 711, 720 (7th Cir. 1991) (de novo review). While these cases are distinguishable from the present one in important respects, they do not imply that testimony regarding truth testing violates due process. Finding a due process violation here would necessarily imply that the Constitution requires all states to have rules of evidence precluding some testimony about truth tests. No Supreme Court precedent demands this result, and the state court's decision therefore was not unreasonable under 28 U.S.C. § 2254(d).

*Maldonado*, 416 F.3d at 477-478 (footnote omitted).  Although more than a decade has passed since the *Maldonado* decision, it remains the case that the Supreme Court has never held that reference to a polygraph test renders a trial fundamentally unfair.  Put simply, Petitioner has failed to demonstrate that the state court's decision is contrary to or an unreasonable application of clearly established federal law.  He has similarly failed to show that the factual determinations upon which the state court's decision are based are unreasonable on this record.  Accordingly, Petitioner is not entitled to habeas relief on this issue.

## F.    Ineffective assistance of counsel

Petitioner claims that he was denied the effective assistance of counsel because his trial attorney failed to conduct an adequate investigation and call crucial witnesses at trial.  In addressing this claim, the Michigan Court of Appeals noted that because Petitioner failed to raise this issue in a motion for a new trial or request for a *Ginther*[1] hearing in the trial court, their review was limited to mistakes on the record.  The Michigan Court of Appeals analyzed Petitioner's ineffective assistance of counsel claims as follows:

> To establish that his trial lawyer provided ineffective assistance, a defendant must show that: (1) his lawyer's representation fell below an objective standard of reasonableness; and (2) but for his lawyer's deficient performance, there is a reasonable probability that the outcome of the proceeding would have been different. *People v Vaughn*, 491 Mich 642, 670-671; 821 NW2d 288 (2012). This Court presumes that a defendant's lawyer rendered effective assistance and exercised reasonable professional judgment in all significant decisions. *Id*. at 670. The decision whether to call or question witnesses is a matter of trial strategy, and the defendant's lawyer has wide discretion regarding matters of strategy. *People v Heft*, 299 Mich App 69, 83; 829 NW2d 266

[1] *People v. Ginther*, 212 N.W.2d 922 (Mich. 1973).

(2012).  The failure to call or question a witness or to present certain evidence constitutes ineffective assistance only when it deprives the defendant of a substantial defense.  *People v Russell*, 297 Mich App 707, 716; 825 NW2d 623 (2012).  "A substantial defense is one that might have made a difference in the outcome of the trial."  *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009) (quotation marks and citation omitted).

Swilley asserts that telephone records could have shown that he did not call Welch or Cannon and that he was not in the area where the offense occurred at the time of the shooting.  He has not, however, produced any records or submitted an affidavit stating what any records would reveal.  Moreover, even if records showed that Swilley did not call Welch or Cannon on the morning of the offense and that his cell phone was not in the area at the time of the shooting, Swilley fails to explain how such evidence could establish a substantial defense.  The testimony indicated that Swilley was with Welch and Cannon at the time of the offense, so he would not have had any apparent reason to call them.  Furthermore, evidence that Swilley's phone was not in the area at the time of the offense would not establish that he was not in the area.  Cannon's eyewitness testimony placed Swilley at the scene of the shooting and Dorsey's testimony supported a finding that Swilley confessed to shooting Weems.  Accordingly, Swilley has not shown that trial counsel's failure to obtain or present phone records was objectively unreasonable or resulted in prejudice.

Swilley also complains that his lawyer failed to call witnesses who could have established an alibi defense, but Swilley has not identified any witnesses or summarized the substance of testimony they could have provided.  Therefore, there is no basis for concluding that any witness could have aided Swilley in establishing an alibi defense.  Swilley's claims of ineffective assistance are, therefore, without merit.

(ECF No. 6-21, PageID.921-22.)

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant

resulting in an unreliable or fundamentally unfair outcome.  *Id.* at 687.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, as the Supreme Court recently has observed, while "'[s]urmounting *Strickland*'s high bar is never an easy task,' . . . [e]stablishing that a state court's application was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 562 U.S. at 105 (quoting *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010)).  Because the standards under both *Strickland* and § 2254(d) are highly deferential, "when the two apply in tandem, review is 'doubly' so." *Harrington*, 562 U.S. at 105 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).  In those circumstances, "[t]he question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.*

It is well established that "[c]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. The duty to investigate derives from counsel's basic function, which is "'to make the adversarial testing process work in the particular case.'" *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986) (quoting *Strickland,* 466 U.S. at 690). This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence. *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005). "In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. "The relevant question is not whether counsel's choices were strategic, but whether they were reasonable." *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000); accord *Clinkscale v. Carter*, 375 F.3d 430, 443 (6th Cir. 2004). A purportedly strategic decision is not objectively reasonable "when the attorney has failed to investigate his options and make a reasonable choice between them." *Horton v. Zant*, 941 F.2d 1449, 1462 (11th Cir.1991) (cited in *Combs v. Coyle*, 205 F.3d 269, 288 (6th Cir. 2000)).

Courts have not hesitated to find ineffective assistance in violation of the Sixth Amendment when counsel fails to conduct a reasonable investigation into one or more aspects of the case and when that failure prejudices his or her client. For example, in *Wiggins v. Smith*, 539 U.S. 510, 524-29 (2003), the Supreme Court held that the petitioner was entitled to a writ of habeas corpus because his counsel had failed to

conduct a reasonable investigation into potentially mitigating evidence with respect to sentencing. *Id.* According to the Court, "counsel chose to abandon their investigation at an unreasonable juncture, making a fully informed decision with respect to sentence strategy impossible." *Id.* at 527-28. Consistent with *Wiggins*, the Sixth Circuit has held, in a variety of situations, that counsel's failure to investigate constituted ineffective assistance in violation of the Sixth Amendment. *See, e.g., Towns*, 395 F.3d at 258-59. (holding that defense counsel's failure to investigate potentially important witness in robbery and felony murder trial was unreasonable, and thus constituted ineffective assistance, in violation of Sixth Amendment); *Combs*, 205 F.3d at 287-88 (holding that defense counsel was constitutionally ineffective for failing to investigate adequately his own expert witness, who testified that, despite the defendant's intoxication at the time of the crime, the defendant nevertheless was capable of forming the requisite intent to commit the crimes); *Sims v. Livesay*, 970 F.2d 1575, 1580-81 (6th Cir. 1992) (holding that counsel was constitutionally ineffective for failing to conduct an investigation into certain physical evidence that would have undermined the prosecution's theory that the victim was shot at a distance); *Blackburn v. Foltz*, 828 F.2d 1177, 1183 (6th Cir. 1987) (holding that counsel's failure "to investigate a known and potentially important alibi witness" constituted ineffective assistance because "[c]ounsel did not make any attempt to investigate this known lead, nor did he even make a reasoned professional judgment that for some reason investigation was not necessary"); *see also Clinkscale*, 375 F.3d

at 443 (collecting cases in which counsel's failure to investigate a potentially important witness constituted ineffective assistance).

As noted by the Michigan Court of Appeals in this case, Petitioner failed to produce any phone records or to submit an affidavit stating what any records would reveal.  In addition, even if records showed that Petitioner did not call Welch or Cannon on the morning of the offense and that his cell phone was not in the area at the time of the shooting, Petitioner fails to explain how such evidence could establish a substantial defense in light of the other evidence presented at trial.  Petitioner's unsupported claim of relevant evidence does not entitle him to relief.  A court "cannot conclude that [] counsel was deficient solely on [the petitioner's] version." *See Fitchett v. Perry*, 644 F. App'x 485, 489 (6th Cir. 2016) (holding that "sheer speculation" of inadequate investigation does not state a claim).  "It should go without saying that the absence of evidence cannot overcome the 'strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance.'" *Burt v. Titlow*, 571 U.S. 12, 23 (2013) (quoting *Strickland*, 466 U.S. at 689).  Therefore, Petitioner has not established that his counsel's failure to obtain or present phone records was objectively unreasonable or resulted in prejudice.

With regard to Petitioner's failure to call witnesses claim, Petitioner does not specify what witnesses his trial counsel should have called, or what testimony they would have provided.  Without such information, Petitioner's cannot establish that his counsel's failure to call a witness was objectively unreasonable or resulted in

prejudice.  Therefore, Petitioner's ineffective assistance of counsel claims are properly denied for lack of merit.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466, 467 (6th Cir. 2001) (per curiam).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.*  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, I have examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

I find that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims would be debatable or wrong.  Therefore, I recommend that the Court deny Petitioner a certificate of appealability.

Moreover, although I conclude that Petitioner has failed to demonstrate that he is in custody in violation of the constitution and has failed to make a substantial showing of a denial of a constitutional right, I would not conclude that any issue Petitioner might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

### Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied.  I further recommend that a certificate of appealability be denied.  Finally, I recommend that the Court not certify that an appeal would not be taken in good faith.

Respectfully submitted,

Date: May 19, 2020

/s/ Phillip J. Green
PHILLIP J. GREEN
United States Magistrate Judge

### NOTICE TO PARTIES

ANY OBJECTIONS to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).